UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
FRANCISCO VELEZ,

                        Plaintiff,

        -against-

NEW YORK CITY POLICE PENSION FUND ARTICLE II;
ANTHONY GARVEY, Former Director, New York City
Police Pension Fund Article II, individually and in his official
capacity as an employee of the CITY OF NEW YORK, and the
ARTICLE II NEW YORK CITY POLICY PENSION FUND;
the NEW YORK CITY POLICE DEPARTMENT; and the
CITY OF NEW YORK,

                        Defendants.
------------------------------------------------------------------------X

**COMPLAINT AND JURY DEMAND**

The plaintiff FRANCISCO VELEZ, by his attorneys the Law Office of Jeffrey L. Goldberg, P.C., as and for his complaint against defendants THE CITY OF NEW YORK; NEW YORK CITY POLICE PENSION FUND ARTICLE II and ANTHONY GARVEY, the NEW YORK CITY POLICE DEPARTMENT respectfully set forth and allege that:

## INTRODUCTION

1. This is an action for equitable relief and money damages on behalf of plaintiff FRANCISCO VELEZ, (hereinafter, "plaintiff") who was, and who is prospectively deprived of his statutory and constitutional rights as a result of the defendant's retaliatory acts and omissions, and discrimination against his race and color in the terms, conditions and privileges of his employment. Said policy was implemented under color of law.

## JURISDICTION AND VENUE

2. The jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331, 1343 and 2202, to secure protection of and to redress deprivation of rights secured by:

1

    (a)    Title VII of the Civil Rights Act of 1964 providing for injunctive and other relief against discrimination in employment on the basis of race, color, religion, sex and national origin;

    (b)    the Civil Rights Act of 1866, 42 U.S.C. § 1981, providing for the protection of all person's right to make and enforce contracts under the color of state law;

    (c)    the Civil Rights Act of 1871, 42 U.S.C. § 1983, providing for the protection of all persons in their civil rights and the redress of deprivation of rights under color of law;

    (d)    the Civil Rights Act of 1871, 42 U.S.C. § 1985(3), providing for protection from conspiracies to interfere with a person's civil rights; and

    (e)    the Code of the Laws of the United States of America ("USC") Title 42 § 2000e-3(a), providing for protection from retaliation by an employer against an employee as a result of an employee's filing a prior legitimate complaint against employers.

3.    The unlawful employment practices, violations of plaintiff's civil rights, and tortious acts complained of herein were committed within the Southern District of New York.

4.    The pendent jurisdiction of the Federal District Court is invoked with respect to the plaintiff's claims under New York State Executive Law § 296, pursuant to 28 U.S.C. § 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding.

**PLAINTIFF**

5. Plaintiff is a male citizen of the United States of America, is over twenty-one (21) years of age, is a resident of Florida, and is a retired employee of Defendant THE CITY OF NEW YORK (hereinafter, "CITY"), specifically, the NEW YORK CITY POLICE DEPARTMENT (hereinafter, "NYPD"). For the purposes of this litigation, defendant CITY may be identified interchangeably using CITY or NYPD to identify the employer which is the CITY.

**DEFENDANTS**

6. Defendant CITY was and is a municipal corporation organized and existing pursuant to the laws of the State of New York, and at all relevant times was plaintiff's current or former employer, with its central offices in the County of New York, and diverse other offices and facilities throughout the City of New York.

7. Defendant CITY was and is a municipal corporation organized and existing pursuant to the law of the State of New York, and at all relevant times was plaintiff's employer, with its central offices in the county of New York, and diverse other offices and facilities throughout the State of New York.

8. Defendant CITY is an employer within the definitions contained in 42 U.S.C. § 12111 (5), employing more than fifteen (15) employees, and is engaged in an industry affecting commerce.

9. Defendant CITY is an employer as defined in New York State Executive Law § 296 and New York City Administrative Code § 8-102.

10. Defendant NYCPPF is an employer as defined in New York State Executive Law § 296 and New York City Administrative Code § 8-102, and was organized primarily to manage and provide retirement and disability benefits for all uniformed members of the service of the

NYPD.

11. Defendant ANTHONY GARVEY, is named individually and in his official capacities as an employee of the Defendants CITY and NYCPPF.

## PROCEDURAL REQUIREMENTS

12. Plaintiff has filed suit with this Court within the applicable statutory time period.

13. Plaintiff is not required to exhaust any administrative procedures prior to suit under the Civil Rights Act of 1871.

14. On or about November 7, 2017, plaintiff sought assistance from the United States Equal Employment Opportunity Commission and filed EEOC Charge No.: 520-2018-00487. On or about December 7, 2017, plaintiff filed EEOC Charge No. 520-2018-01036, based on the same essential facts.

15. On November 20, 2017, and February 12, 2018, plaintiff received Notice of Right to Sue letters from the United States Department of Justice, based on the above-cited EEOC charges, respectively.

## BACKGROUND

16. Plaintiff was appointed to the uniformed force of the NYPD on June 16, 1969, and served continuously as a member of said uniformed force until his retirement for service on September 30, 2003. Plaintiff, prior to his appointment with the NYPD, passed all required physical and mental examinations administered by the NYPD, which demonstrated plaintiff to be both physically and mentally fit to perform the full duties of a police officer. Plaintiff's service with the NYPD during his NYPD employment was satisfactory at all times.

17. Plaintiff was the lead plaintiff in a prior legal action against the CITY and the NYPD, which involved defendant ANTHONY GARVEY in his capacity as president of the

Union that represents NYPD Lieutenants (the Lieutenant's Benevolent Association, hereinafter, "LBA"). The case involved plaintiff, along with the largest number of Latino, minority, and female applicants for promotion to the rank of Lieutenant who had ever passed the promotional examination at that time, who alleged discrimination in the subsequent promotional process. This litigation was commenced in New York State Supreme Court, under New York County Civil Index Number 10346/90, and was ultimately settled in favor of the plaintiffs, as per the Court's May 24, 1992, Stipulation of Settlement and Discontinuance.

18. Around that time, plaintiff attended a conference with representatives from the CITY, including the president of the New York City Police Captain's Union (hereinafter, "CEA"), and defendant GARVEY, then-president of the LBA, in connection with the settlement of this case. Plaintiff's settlement demands required that the NYPD reinstate the aggrieved members into their previous rightful places on the promotion list. The CEA and the LBA did not wish to comply with this demand. At that time, GARVEY warned plaintiff that "The Police Department remembers its friends and never forgets its enemies," in response to his settlement demands.

19. On September 11, 2001, plaintiff was a first responder to the World Trade Center disaster ("WTC"), where he participated in the rescue, recovery and clean-up operations for multiple days. As a result, he was diagnosed with throat cancer.

20. On September 20, 2001, NYPD issued "finest" message #1621, which required that all commanding NYPD officers "submit a report to the medical division, identifying all members of the service, both uniform and civilian, who were assigned to report or who voluntarily reported, to the scene." This imperative was codified in Operations Order Number 18, on April 19, 2002. Plaintiff was assigned WTC exposure report number 00604, to

contemporaneously document his work-related exposure at the WTC.

21.     On April 5, 2007, plaintiff filed a sworn "Notice of Participation in the World Trade Center Rescue, Recovery or Clean-Up Operation," pursuant to New York State Retirement and Social Security Law § 2.36 (a) (i). This statute requires that, in order to be entitled to WTC-related disability benefits, a qualifying member, "must have filed a written and sworn statement with the member's retirement system on a form provided by such system indicating the underlying dates and locations of employment not later than September eleventh, two thousand eighteen."

22.     On May 11, 2007, plaintiff submitted an application for Accident Disability Retirement ("ADR") under Chapter 93 of the Laws of 2005, *i.e.*, NYC Administrative Code § 13-252.1, (the "WTC Disability Law").[1]

23.     On August 22, 2007, the NYCPPF Medical Board (hereinafter, "Medical Board") interviewed and examined plaintiff and recommended approval of his application for ADR under the WTC Disability Law, with a diagnosis of stage IV metastatic pharyngeal cancer. As per the NYCPPF's administrative procedure, the Medical Board's recommendation was subsequently submitted to the Board of Trustees for ratification.

24.     The NYCPPF Board of Trustees met to discuss plaintiff's case at their regular monthly meetings on March 12, April 9, July 9, and August 13, 2008. The trustees adjourned ("tabled") the case numerous times to verify plaintiff's participation in WTC-related work activities, through NYPD documentation, before adopting the Medical Board's recommendation.

---

[1] This law states that certain conditions, including upper-respiratory disease and cancer, are presumptively work-related for officers who participated in WTC rescue and recovery efforts, thus entitling the member to enhanced pension benefits.

The Trustees alleged that they were unable to verify plaintiff's WTC participation.[2] Upon information and belief, NYCPPF employees alleged that plaintiff was never present at the WTC.

25. Plaintiff submitted three affidavits from fellow officers, attesting to his presence at the WTC site during the requisite time period to the Board of Trustees in connection with his disability application.

26. In an Affidavit dated April 26, 2007, Lt. Hector Hernandez stated:

> The undersigned did personally observe Lt. Francisco Velez, tax # 862683, assigned to the 62nd precinct, perform a minimum of 40 hours on 5 different dates at ground Zero from the period of September 11, 2001 to September 12, 2002.

27. In an Affidavit Dated May 7, 2007, Sgt. Thomas Borneisl, stated:

> The undersigned did personally observe Lt. Francisco Velez, tax # 862683, assigned to the 62nd precinct, perform a minimum of 40 hours on 5 different dates at Ground Zero from the period of Sept. 11, 2001, to September 12, 2002.

28. In an Affidavit dated April 22, 2008, Donald Conceicao, Deputy Inspector (Retired), Lt. Velez' Commanding Officer, stated:

> The undersigned is writing to attest to the fact that Lt. Francisco Velez Tax # 862683 assigned to the 62 precinct worked over 40 hours at ground zero between September 11, 2001, and September 12, 2002.
>
> I personally observed Lt. Velez during at least 6 12-hour tours for a total of 72 hours at ground zero.

29. On September 10, 2008, the Board of Trustees tabled the case again, to review departmental documentation in order to verify plaintiff's WTC participation.

30. On November 7, 2008, plaintiff's attorney wrote a letter to the Board of Trustees,

---

[2] New York State Retirement and Social Security Law § 2.36 (g) requires that a member has served in WTC-related work activity for at least 40 hours between September 11, 2001, and September 12, 2002, or, at any point within the first 48 hours of the first plane hitting the North Tower.

which he stated, *inter alia*:

> For your information, in the FDNY 1B Pension Fund ("FPF") and affidavit by a superior officer is all that is required to verify the 40 hour requirement. The same City representatives that sit on the PPF sit on the FPF. The same standard should apply when the Trustees decide cases for members of NYPD.

31. On November 12, 2008, the Board of Trustees finalized plaintiff's case, and denied his application under the WTC Disability Law.

32. On November 26, 2012, plaintiff filed a second application or ADR under the WTC Disability Law. On July 31, 2013, the Medical Board again recommended approval of his application, with a diagnosis of "sequela of treatment for metastatic cancer."

33. In advance of the Board of Trustees' October 9, 2013, regular monthly meeting, plaintiff's attorney submitted a letter to the Trustees, which stated, *inter alia*:

> [Plaintiff's] application was denied by the Board of Trustees on November 12, 2008, on the issue of verification. At that time, Lt. Velez submitted three (3) Affidavits which confirmed his presence at the WTC. These Affidavits were the best evidence he had available to him to verify the time he worked at the WTC… The Board of Trustees were unable to locate the Roll Calls or the Unmarked Vehicle Utilization Logs from Velez' command for September 2001 and October 2001. I respectfully request that the Board of Trustees obtain the September 2001 and October 2001 time records from the lieutenant's former command. These records, along with his WTC Exposure Number, will confirm that Lt. Velez worked over 40 hours at a WTC designated site and is therefore entitled to ADR under the WTC Disability Law.

34. In connection with his second application, plaintiff proffered his WTC exposure report number 00604, which NYPD issued to plaintiff in 2002, to contemporaneously document his work-related exposure at the WTC. [*See* ¶ 20, *supra*]

35. Also in connection with his second application, plaintiff submitted an additional sworn statement from Deputy Inspector Donald Conceicao, dated February 7, 2014, which attested to plaintiff's WTC-related work.

36. Also in connection with his second application, plaintiff submitted a personal statement, dated May 13, 2014, which detailed the work assignments in which he was involved in the immediate aftermath of the WTC.

37. The Board of Trustees denied plaintiff's second ADR application at their regular monthly meeting on May 14, 2014.

38. On or about March 27, 2015, the Federal September 11th Victims Compensation Fund ("VCF") approved plaintiff's claim under the Zadroga Act, and informed plaintiff that he meets the eligibility requirements by letter dated March 27, 2015. The information used to verify plaintiff's participation before the VCF was the same information that plaintiff submitted to the PPF in connection with plaintiff's prior ADR applications.

39. On February 26, 2016, plaintiff filed his third application for ADR under the WTC Disability Law. On August 31, 2016, the Medical Board again found plaintiff disabled with a diagnosis of "Stage IV Metastatic Pharyngeal Cancer."

40. In further support of his third application, and in addition to all of the materials already submitted to the NYCPPF, plaintiff submitted an Amended Notice of Participation, dated January 4, 2017.

41. At their regular monthly meeting on March 8, 2018, the Board of Trustees denied plaintiff's third application, based on their failure to verify his participation in qualifying WTC-related work activity.

42. Upon information and belief, the CITY verifies WTC participation for uniformed members of the New York City Fire Department, based solely on statements attesting to their participation from a superior officer, such as plaintiff presented in this case.

43. Upon information and belief, there are other applicants who have been awarded

ADR, based on similar evidence.

44. Upon information and belief, Defendant ANTHONY GARVEY improperly influenced the outcome of plaintiff's ADR application, in retaliation for plaintiff's prior legitimate lawsuit.

## VIOLATIONS AND CLAIMS ALLEGED
### COUNT I
### RETALIATION
### IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

46. Plaintiff re-alleges paragraphs 1 through 45 and incorporates them by reference as paragraphs 1 through 45 of Count I of this Complaint.

47. Plaintiff alleges that defendant CITY through its agents, including defendant GARVEY, engaged in various retaliatory actions against plaintiff as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the New York State Supreme Court, in violation of 42 U.S.C. § 2000e-3(a).

48. That as a result of the illegal acts of defendant CITY through its agents, plaintiff has been deprived of the ADR benefits to which he is legally entitled.

### COUNT II
### RACE AND COLOR DISCRIMINATION
### IN VIOLATION OF
### TITLE VII OF THE CIVIL RIGHTS ACT OF 1964

49. Plaintiff re-alleges paragraphs 1 through 48 and incorporates them by reference as paragraphs 1 through 48 of Count II of this Complaint.

50. Plaintiff alleges that defendant CITY through its agents, including defendant GARVEY engaged in a pattern and practice of discrimination against him with respect to the terms, conditions and privileges of employment because of the plaintiff's race and color in violation of 42 U.S.C. § 2000e-2.

51. As part of its pattern and practice of employment discrimination defendant CITY through its agents treated plaintiff in a manner indicative of race and color discrimination, with respect to its treatment of his application for ADR.

52. Defendant CITY knew or should have known about race and color discrimination in the workplace because of their prior history of litigation with plaintiff.

53. Defendants acted in a systematic pattern of discrimination and bad faith, directed at plaintiff and continued from in or about 1990, until the day his most recent ADR application was finalized.

53. Defendant CITY failed and refused to take appropriate action to end the discriminatory treatment and conditions to which plaintiff was subjected.

54. That as a result of the discriminatory acts of defendant CITY through its agents, plaintiff has been deprived of the ADR benefits to which he is legally entitled, and has suffered emotional distress, medical and legal expenses, and out-of-pocket expenses for telephone, postage, and other costs of pursuing the claims described herein.

**COUNT III**
**HOSTILE WORK ENVIRONMENT**
**IN VIOLATION OF**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964**

55. Plaintiff re-alleges paragraphs 1 through 54 and incorporates them by reference as paragraphs 1 through 54 of Count III of this Complaint.

56. Plaintiff alleges that Defendants engaged in various severe and hostile actions towards plaintiff because of his opposition to race and color discrimination and because of his filing prior legitimate complaints against the NYPD.

57. That as a result of the severe and hostile acts of the Defendant CITY

through its agents, plaintiff has been deprived of the ADR benefits to which he is legally entitled.

## COUNT IV
## RETALIATION IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

58. Plaintiff re-alleges paragraphs 1 through 57 and incorporates them by reference as paragraphs 1 through 65 of Count IV of this Complaint.

59. Plaintiff alleges that defendants engaged in various retaliatory actions against him acting individually and in their capacities as supervisory and/or administrative officials of defendant CITY as a result of his opposition to race and color discrimination.

60. That the purpose of defendants in so acting was to prevent plaintiff, through intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens and public employees under the Constitution and laws of the United States and the State of New York.

61. Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights, by intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

62. As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff was deprived of ADR benefits to which he was legally entitled, and suffered mental anguish and emotional distress.

## COUNT V
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

63. Plaintiff re-alleges paragraphs 1 through 62 and incorporates them by reference as paragraphs 1 through 62 of Count V of this Complaint.

64. That by the aforesaid discriminatory acts and omissions of defendants interfered with plaintiff's right to enforce contracts under the color of State Law.

65. That the purpose of defendants in so acting was to prevent plaintiff, through intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens and public employees under the Constitution and laws of the United States and the State of New York.

66. Pursuant to their conduct, the defendants' acted to deprive the plaintiff of his civil rights in violation of 42 U.S.C. § 1981.

67. As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff was deprived of ADR benefits to which he was legally entitled, and suffered mental anguish and emotional distress.

## COUNT VI
## HOSTILE WORK ENVIRONMENT
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1866, 42 U.S.C. § 1981

68. Plaintiff re-alleges paragraphs 1 through 67 and incorporates them by reference as paragraphs 1 through 70 of Count VI of this Complaint.

69. Plaintiff alleges that defendants engaged in various severe and hostile actions against him, acting individually and in their capacities as supervisory and/or administrative officials of defendant CITY, as a result of his opposition to race and color discrimination.

70. That the purpose of defendants in so acting was to prevent plaintiff, through intimidation, from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens and public employees under the Constitution and laws of the United States and the State of New York.

71. Pursuant to their conduct, the defendants acted to deprive the plaintiff of his civil

rights, by repeated and insidious acts of harassment, intimidation, bad faith and threat, all in violation of 42 U.S.C. § 1981.

72. As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff was deprived of ADR benefits to which he was legally entitled, and suffered mental anguish and emotional distress.

## COUNT VII
## RACE AND COLOR DISCRIMINATION
## IN VIOLATION OF
## THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983 CONSPIRACY

73. Plaintiff re-alleges paragraphs 1 through 72 and incorporates them by reference as paragraphs 1 through 72 of Count VII of this Complaint.

74. Defendants under color of law, conspired with one another to deprive plaintiff of his constitutional and statutory rights.

75. Defendants acting individually and in their official capacities as supervisory and/or administrative officers of defendant CITY under color of law, and having been fully advised that plaintiff, a Latin-American male, was being deprived of his constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights, in violation of 42 U.S.C. § 1983.

76. Defendants acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

77. Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or about 1990, until the day his the NYCPPF finalized his last ADR application.

78. As a result of the acts of the defendants under color of law, plaintiff suffered

emotional distress, monetary damage, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

## COUNT VIII
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1985(3)

79. Plaintiff re-alleges paragraphs 1 through 78 and incorporates them by reference as paragraphs 1 through 78 of Count VIII of this Complaint.

80. That by the aforesaid discriminatory acts and omissions of the Defendants, they conspired, planned, agreed and intended to act in manner to cause economic and psychological injury to plaintiff.

81. That the purpose of the Defendants in so acting was to prevent plaintiff from obtaining the benefits to which he was entitled under the law and from seeking the equal protection of the laws, and from enjoying the equal privileges and immunities of citizens under the Constitution and laws of the United States and the State of New York.

82. Pursuant to their conspiracy, Defendants acted to deprive the plaintiff of his civil rights, by repeated and insidious acts of discrimination and bad faith, all in violation of 42 U.S.C. § 1985 (3).

83. As a result of the aforesaid acts, depriving plaintiff of his civil rights, plaintiff suffered mental anguish, emotional distress, physical illness, monetary damages, in addition to deprivation of his civil rights.

## COUNT IX
### HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE CIVIL RIGHTS ACT OF 1871, 42 U.S.C. § 1983

84. Plaintiff re-alleges paragraphs 1 through 83 and incorporates them by reference as paragraphs 1 through 89 of Count IX of this Complaint.

85. Defendants under color of law, conspired with one another to deprive plaintiff of his constitutional and statutory rights, without due process of law.

86. Defendants acting individually and in their official capacities as supervisory and/or administrative officers of defendant CITY, under color of law, and having been fully advised that plaintiff was being deprived of his pension and constitutional rights, either acted in a concerted, malicious intentional pattern to further discriminate against plaintiff, or knowing such discrimination was taking place, knowingly omitted to act to protect plaintiff from continuing deprivations of his rights without due process of law, all in violation of 42 U.S.C. § 1983.

87. Defendants in acting to deprive plaintiff's rights, acted intentionally, knowingly, willfully, and with gross disregard of plaintiff's rights.

88. Defendants acted in an outrageous and systematic pattern of discrimination, oppression, bad faith and cover-up, directed at plaintiff and continuing from in or about 1990, until the day his the NYCPPF finalized his last ADR application.

89. As a result of the acts of the defendants under color of law, plaintiff suffered emotional distress, monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage, and other costs of pursuing the claims herein.

### JURY TRIAL

90. Plaintiff demands a trial by jury of all issues in this action that are so triable.

### PRAYER FOR RELIEF

**Wherefore,** plaintiff demands compensatory and punitive damages from these defendants' jointly and severally, in an amount to be determined at trial, plus any and all available statutory remedies, both legal and equitable, and interests and costs.

Dated:  Port Washington, N.Y.
     February 13, 2018

            Respectfully submitted,

         By: _____
           JEFFREY L. GOLDBERG, ESQ. (JG9623)
           Law Office of Jeffrey L. Goldberg, P.C.
           Attorneys for Plaintiff
           6 Harbor Park Drive
           Port Washington, NY 11050
           516-775-9400