UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

FRANCISCO VELEZ,

        Plaintiff,

- against -

NEW YORK CITY POLICE PENSION FUND ARTICLE II; ANTHONY GARVEY, Former Director, New York City Police Pension Fund Article II, individually and in his official capacity as an employee of the CITY OF NEW YORK, and the ARTICLE II NEW YORK CITY POLICY PENSION FUND; the NEW YORK CITY POLICE DEPARTMENT; and the CITY OF NEW YORK,

        Defendants.

**OPINION AND ORDER**

18 Civ. 1366 (ER)

---

Ramos, D.J.:

    Francisco Velez served as a uniformed member of the New York City Police Department ("NYPD") from 1969 through his retirement in 2003. In 2007, he applied for certain benefits that officers who had participated in the World Trade Center rescue and recovery efforts are eligible to receive. The board of trustees responsible for determining Velez's eligibility for benefits denied his application. Velez applied twice more, and he was denied twice more.

    Velez believes that the board's denials of his applications constitute racial discrimination and retaliation attributable to Anthony Garvey, a former member of the board. Velez claims that Garvey improperly influenced the board to exact revenge against Velez, who successfully sued the NYPD in the early 1990s.

    After Velez's application was denied for the third time, Velez filed the instant complaint against Garvey, the City of New York (the "City"), the NYPD, and the pension fund from which the benefits at issue are disbursed. The defendants now move to dismiss Velez's complaint in its entirety. Doc. 25. For the reasons explained below, the motion is GRANTED.

## I. BACKGROUND

### A. **Factual Background**[1]

Velez, a self-described "Latin-American male," is a retired member of the NYPD. Doc. 1 ¶¶ 1, 75. In 1990, Velez, "along with the largest number of Latino, minority, and female applicants for promotion to the rank of Lieutenant who had ever passed the promotion examination at that time," filed an article 78 petition against the City and the NYPD in the Supreme Court of New York.[2] *Id.* ¶ 17; *see Velez v. White*, Index No. 010346-1990 (N.Y. Sup. Ct. N.Y. Cty. May 31, 1990) [hereinafter "*Velez I*"].[3] The *Velez I* plaintiffs alleged that the NYPD's promotional process was discriminatory. Doc. 1 ¶¶ 17–18. As relief, the plaintiffs sought reinstatement onto the list of NYPD members eligible for promotion to the rank of Lieutenant. *Id.* The Lieutenant's Benevolent Association of the NYPD (the "LBA"), moved to intervene in *Velez I*, as any disposition thereof would have directly impacted its membership. *Id.*; *see also* Doc. 26-2 at 64–65, 83. During the course of *Velez I*, Anthony Garvey served as LBA President. Doc. 1 ¶ 18.

The parties settled in 1992. *Id.* In connection with that settlement, Velez met with several representatives of the City, including Garvey. *Id.* Velez demanded that the NYPD reinstate the *Velez I* plaintiffs to the list of officers eligible for promotion to the rank of

---

[1] The following facts are drawn from the allegations in Velez's complaint, which the Court accepts as true in evaluating Defendants' motion to dismiss. *Koch v. Christie's Int'l PLC*, 699 F.3d 141, 145 (2d Cir. 2012). The Court also draws from and considers documents incorporated by reference therein. *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010).

[2] "In New York, Article 78 is a method for challenging state administrative action." *Davis v. Halpern*, 813 F.2d 37, 38 n.1 (2d Cir. 1987).

[3] The Court takes judicial notice of *Velez I* and other relevant state-court litigation involving Velez, not for the truth of the factual matters asserted therein but rather to establish the fact of such litigation and any filings related thereto. *See Liberty Mut. Ins. Co. v. Rotches Pork Packers, Inc.*, 969 F.2d 1384, 1388 (2d Cir. 1992).

Lieutenant. *Id.* However, the LBA pushed back on Velez's demand, and during this meeting Garvey warned him that "[t]he Police Department remembers its friends and never forgets its enemies." *Id.*

Following the conclusion of *Velez I*, Velez continued to work at the NYPD until his retirement in 2003. *Id.* ¶ 16. Unfortunately, Velez eventually was diagnosed with throat cancer.[4] *Id.* ¶ 19. Velez believes his throat cancer is attributable to his work as a first responder in the aftermath of the tragic terrorist attack on September 11, 2001, at the World Trade Center. *Id.*

In 2007, four years after retiring, Velez applied for "accidental disability retirement" benefits ("ADR benefits") under the World Trade Center Law ("WTC Law"), N.Y.C. Admin. Code § 13-252.1. ADR benefits are disbursed from the New York City Police Pension Fund (the "Pension Fund"). A brief overview of the Pension Fund's regulatory scheme is provided below.

The Pension Fund is administered by a Board of Trustees (the "Board"). *See id.* §§ 13-202(a), 206. An applicant's eligibility for ADR benefits is determined by a two-step process. "Initially, the [P]ension [F]und's Medical Board conducts a physical examination, interviews the applicant, and reviews the submitted evidence, before submitting a recommendation to the Board of Trustees." *Stavropoulos v. Bratton*, 50 N.Y.S.3d 2, 5 (App. Div. 1st Dep't 2017); *see* N.Y.C. Admin. Code § 13-206(e) ("The board of trustees shall have the power to grant, award or pay a pension on account of physical or mental disability or disease, only upon a certificate of a medical board or a special medical board after examination . . . ."). "In the second step, the Board votes to either grant or deny ADR benefits." *Stavropoulos*, 50 N.Y.S.3d at 5. The Board's ultimate responsibility is to determine whether the applicant "is physically or mentally incapacitated for the performance of city-service as a natural and proximate result of an

---

[4] The record before the Court does not indicate when Velez was diagnosed with cancer.

3

accidental injury received in such city-service while a member, and that such disability was not the result of wilful negligence on the part of such member." N.Y.C. Admin. Code § 13-252.

The Board consists of twelve members: (1) the police commissioner, who is also the chairperson of the Board; (2) the City's comptroller; (3) a representative appointed by the mayor; (4) the City's finance director; (5) the president of the City's Patrolmen's Benevolent Association (i.e., the NYPD police officer union); (6) the first vice-president of the City's Patrolmen's Benevolent Association; (7) the second vice-president of the City's Patrolmen's Benevolent Association; (8) the chairperson of the Board of the City's Patrolmen's Benevolent Association; (9) the president of the NYPD's Captains Endowment Association (i.e., the union representing NYPD officers with the rank of captain, deputy inspector, inspector, deputy chief, and surgeon); (10) the president of the LBA; (11) the president of the City's Sergeants' Benevolent Association; and (12) the president of the City's Detectives' Endowment Association. *Id.* § 13-216. Every action by the Board, excepting actions related to budget and investment matters, must be adopted with the support of at least seven votes. *Id.*

"A claimant filing for ADR benefits ordinarily has the burden of proving causation in an administrative proceeding. But as part of the [New York State] legislature's response to the World Trade Center tragedy, a new statute was enacted creating a presumption in favor of ADR benefits for police officers who performed rescue, recovery or cleanup operations at specified locations, including the World Trade Center . . . ." *Bitchatchi v. Bd. of Trs. of N.Y.C. Police Dep't Pension Fund*, 982 N.E.2d 600, 602 (N.Y. 2012) (citing N.Y.C. Admin. Code § 13-252.1(1)(a)). This statute, also known as the WTC Law, provides for a rebuttable presumption of benefits eligibility for certain applicants:

4

> [I]f any condition or impairment of health is caused by a qualifying World Trade Center condition . . . , it shall be presumptive evidence that it was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member's own willful negligence, unless the contrary be proved by competent evidence.

N.Y.C. Admin. Code § 13-252.1(1)(a). "Under the WTC presumption, the [P]ension [F]und bears the initial burden of proving that a claimant's qualifying condition was not caused by the hazards encountered at the WTC site." *Bitchatchi*, 982 N.E.2d at 602. Of course, before such presumption applies, the applicant must show that he or she suffers from a "qualifying World Trade Center condition." A qualifying World Trade Center condition is defined, in part, as "a *qualifying condition* or impairment of health resulting in disability to a member who participated in World Trade Center rescue, recovery or cleanup operations for a *qualifying period*." N.Y. Retire. & Soc. Sec. Law § 2(36)(b) (emphases added). A qualifying condition includes "disease of the upper respiratory tract," including throat cancer. *Id.* § 2(36)(c). And the qualifying period is defined as "(i) any period of time within the forty-eight hours after the first airplane hit the towers," or (ii) "a total of forty hours accumulated any time between September [11, 2001] and September [12, 2002]." *Id.* § 2(36)(g).

Returning to the instant dispute, Velez first applied for ADR benefits in May 2007. Doc. 1 ¶ 22. In connection with his application, Velez submitted three affidavits from fellow officers who attested to Velez's presence at the World Trade Center site during the qualifying period. *Id.* ¶¶ 26–30. The Pension Fund's Medical Board interviewed and examined Velez and recommended approval of his application. *Id.* ¶ 24. However, after meeting on several occasions to discuss Velez's application, the Board concluded that they were unable to verify that Velez participated in the World Trade Center rescue, recovery, or cleanup operations. *Id.* Consequently, the Board denied his application on November 12, 2008. *Id.* ¶¶ 24, 31.

Unsatisfied with the Board's decision, Velez filed an article 78 petition in the Supreme Court of New York, challenging the Board's decision as arbitrary and capricious. *Velez v. Kelly*, Index No. 101597-2009, 2009 N.Y. Misc. LEXIS 5556 (N.Y. Sup. Ct. N.Y. Cty. Oct. 19, 2009) [hereinafter "*Velez II*"]; *see also* Doc. 26-3 at 160–73. On October 19, 2009, the state court denied Velez's challenge, concluding , *inter alia*, (1) that "there [wa]s sufficient credible evidence that [Velez]'s medical condition, although disabling, d[id] not comply with the WTC Disability Law requirements that he have worked 40 hours at the WTC site," and (2) that "[Velez]'s argument that the Board failed to provide him with a fair and reasonable opportunity to establish his entitlement lack[ed] merit." *See Velez II*, 2009 N.Y. Misc. LEXIS 5556, at \*9, \*12.

On May 31, 2011, the Supreme Court of New York, Appellate Division, First Department, affirmed. In so affirming, the First Department concluded that (1) "[c]redible evidence supported the conclusion that [Velez]'s disability was not caused by a service-related accident" and (2) "the record demonstrate[d] that [Velez] failed to raise the presumption that his disability was incurred in the performance and discharge of duty and the natural and proximate result of an accident not caused by such member's own willful negligence." *Velez v. Kelly*, 923 N.Y.S.2d 837, 837–38 (App. Div. 1st Dep't 2011) (citations omitted).

On November 26, 2012, Velez filed a second application for ADR benefits. Doc. 1 ¶¶ 32–36. Again, the Medical Board recommended approval of his application. *Id.* ¶ 32. Again, however, the Board of Trustees denied his application. *Id.* ¶ 37.

6

On February 26, 2016, Velez filed a third application for ADR benefits. *Id.* ¶ 38. On March 8, 2017, the Board denied his third application.[5] *Id.* ¶ 41.

Following the Board's denial of his third application, Velez filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC"). *Id.* ¶¶ 14–15; *see also* Doc. 26-6.[6] In his EEOC charge, Velez alleged that the NYPD and the Pension Fund discriminated and retaliated against him from November 12, 2008—the date of the Board's denial of his first application—through March 8, 2017—the date of the Board's denial of his third application. Doc. 26-6 at 5.

### B. Procedural History

Velez filed the instant action on February 15, 2018. Doc. 1. In his nine-count complaint, Velez asserts claims against Garvey, the City, the NYPD, and the Pension Fund (collectively, "Defendants") for retaliation, in violation of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.*, and 42 U.S.C. § 1981; race and color discrimination in violation of Title VII and 42 U.S.C. §§ 1981 and 1983; hostile work environment, in violation of Title VII and 42 U.S.C. §§ 1981 and 1983; and conspiracy to interfere with civil rights, in violation of 42 U.S.C. §§ 1981 and 1985(3).[7]

---

[5] The Court notes that Velez's complaint states that the Board denied his application on March 8, 2018, not 2017. Doc. 1 ¶ 41. The Court suspects that this date is a scrivener's error, as March 8, 2018, would come after Velez's EEOC charge of discrimination, which was filed on December 7, 2017. *See* Doc. 26-6 at 5.

[6] Defendants have produced a copy of Velez's EEOC charge, which is incorporated into Velez's complaint by reference. *See* Doc. 1. ¶ 14; Doc. 26-6.

[7] In their moving papers, the parties both reference a claim alleged by Velez under New York State Human Rights Law (NYSHRL). The Court notes that Velez never alleged such a claim in the instant complaint. Rather, Velez's complaint makes only a passing reference to such a claim while setting forth the jurisdictional basis for the complaint. *See* Doc. 1 ¶ 4 ("The pendent jurisdiction of the Federal District Court is invoked with respect to plaintiff's claims under *New York State Executive Law § 296*, pursuant to 28 U.S.C. § 1367, because the entire action before the court comprises one constitutional and civil rights case, and the claims arise out of the same common nucleus of facts and are such that the plaintiff would ordinarily be expected to try them in one judicial proceeding." (emphasis added)). Regardless, the Court concludes that any claim under NYSHRL would fail for substantially the same reasons Velez's other claims fail, as discussed *infra*.

Velez alleges that other applicants have been awarded ADR benefits based on similar amounts of evidence he proffered to the Board. Doc. 1 ¶ 43. Velez also alleges that Garvey has "improperly influenced the outcome" of his ADR applications in retaliation for Velez's prior lawsuit against the City and NYPD. *Id.* ¶ 44. However, Velez's complaint does not allege how Garvey influenced the outcome of his applications.

On August 3, 2018, Defendants filed a pre-answer motion to dismiss Velez's complaint pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure. Doc. 25.

## II. STANDARD OF REVIEW

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although a plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully," *id.*, "a complaint . . . does not need detailed factual allegations" to survive a motion to dismiss, *Twombly*, 550 U.S. at 555.

The question on a motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir. 1995)). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits" or "weigh[ing] the evidence that might be offered to support it." *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011)

(citations and internal quotation marks omitted). Consequently, when ruling on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts all plausible and nonconclusory factual allegations in the complaint as true and draws all reasonable inferences in the plaintiff's favor. *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir. 2014); *see also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable. . . ."). "For purposes of this rule, the complaint is deemed to include any written instrument attached to it as an exhibit or any statements or documents incorporated in it by reference." *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002) (internal quotation marks omitted).

### III. DISCUSSION

#### A. Velez's Claims against the NYPD are Dismissed

Defendants argue that Velez's claims against the NYPD must be dismissed because the NYPD is not a suable entity. *See* Doc. 27 at 2 n.1. Velez does not oppose dismissal of his claims against the NYPD, and, in any event, the Court agrees with Defendants. *See Johnson v. City of New York*, 15 Civ. 6915 (ER), 2019 WL 294796, at *4 (S.D.N.Y. Jan. 23, 2019). Hence, Velez's claims against the NYPD are dismissed.

#### B. Collateral Estoppel Does Not Bar Velez's Claims in this Action

Defendants argue that the doctrine of collateral estoppel (i.e., issue preclusion) bars Velez from raising any of his claims related to the Board's denial of Velez's first application for ADR benefits because "the factual issues surrounding the denial of [Velez]'s first application for ADR benefits were judicially litigated in [*Velez II*]; [Velez] had a full and fair opportunity to litigate those issues; and their resolution was necessary to support a valid and final judgment on the

9

merits." Doc. 27 at 10 (citing *Latino Officers Ass'n v. City of New York*, 253 F. Supp. 2d 771, 783 (S.D.N.Y. 2003)). This argument is meritless.

"The Second Circuit has made clear that Article 78 proceedings do not bar subsequent § 1983 civil rights actions under principles of *res judicata* or collateral estoppel where (i) the plaintiff made no more than a fleeting reference to discrimination in his Article 78 petition and (ii) the issue of discrimination was neither considered nor rejected in holding that the plaintiff's termination was supported by substantial evidence." *Warmin v. N.Y.C. Dep't of Educ.*, No. 16 civ. 8944 (KPF), 2018 WL 1441382, at *10 (S.D.N.Y. Mar. 22, 2018) (citing *Abdelal v. Kelly*, 726 F. App'x 8, 10–11 (2d Cir. 2018) (summary order)). Here, Defendants contend that the crux of the instant action remains the same as in *Velez II*. Yet in their moving papers Defendants readily admit that Velez did *not* raise claims of discrimination or retaliation in *Velez II*. *See* Doc. 27 at 19. The Court therefore concludes that Velez's claims are not precluded.[8] *See Abdelal*, 726 F. App'x at 10–11 ("Here, defendants do not meet their burden of showing that the identical issues had been decided in the Article 78 proceeding. . . . The fact that the First Department concluded that the administrative record contained 'substantial evidence to support the finding that petitioner engaged in conduct prejudicial to the good order, efficiency and discipline of the NYPD,' does not mean that the court considered and rejected Abdelal's claims that he was subjected to harassment and disproportionate punishment for discriminatory reasons." (citation omitted)); *Goonewardena v. N.Y. State Workers' Comp. Bd.*, No. 09 Civ. 8244 (HBP), 2016 WL 7439414, at *8 (S.D.N.Y. Feb. 9, 2016) (collecting cases), *report and recommendation adopted*, No. 09 Civ. 8244 (RA), 2016 WL 7441695 (S.D.N.Y. Dec. 22, 2016).

---

[8] For similar reasons, the Court rejects Defendants' argument that Velez's claims constitute a thinly veiled challenge to the Board's denials of his applications and are thus procedurally improper and time-barred. *See* Doc. 27 at 14–16.

### C. Velez's Title VII Claims Fail

#### 1. *Velez's Title VII Claims against Garvey and the Pension Fund are Dismissed*

Velez's Title VII claims against Garvey are dismissed because Title VII "does not create liability in individual supervisors and co-workers who are not the plaintiffs' actual employers." *Raspardo v. Carlone*, 770 F.3d 97, 113 (2d Cir. 2014).

Velez's claims are also dismissed as to the Pension Fund, an entity Velez neither alleges he worked for nor alleges he sought employment from nor alleges any other facts that would suggest the existence of an employer-employer relationship. *See Gulino v. N. Y. State Educ. Dep't*, 460 F.3d 361, 377–78 (reiterating that existence of employer-employee relationship in Title VII context requires adherence to common law agency principles); *cf.* N.Y.C. Admin. Code § 13-216(e)(5) ("The pension fund shall be considered an entity separate from the city of New York police department. The board of trustees of the pension fund shall work closely with the city of New York police department.").

#### 2. *Velez's Claim for Retaliation under Title VII Fails*

Velez's claim for retaliation is time-barred insofar as the claim is based on incidents that occurred before January 11, 2017—that is, 300 days prior to his EEOC charge, which was first filed on November 7, 2017. *See* Doc. 1 ¶ 14. In New York, "[a]n aggrieved employee wishing to bring a Title VII claim in district court must file an administrative complaint with the EEOC within 300 days of the alleged discriminatory act." *Petrosino v. Bell Atl.*, 385 F.3d 210, 219 (2d Cir. 2004); *see* 42 U.S.C. § 2000e-5(e). Here, Velez initially filed an EEOC charge on November 7, 2017, and he filed a corrected charge on December 7, 2017, "based on the same essential facts." Doc. 1 ¶ 14. In his EEOC charge, Velez alleged discrimination from as early as November 12, 2008—the date the Board first denied Velez's application for ADR benefits—

through March 8, 2017—presumably the date the Board denied his application for the third time. Doc. 26-6. Because the Board's first two denials occurred more than 300 days before Velez filed an EEOC charge, his retaliation claim is time-barred insofar as it relies upon those denials as adverse employment actions.[9]

To rescue his claims from Title VII's statutory limitations period, Velez argues that the Board's denials of his first two applications are subject to the "continuing violation" doctrine. *See* Doc. 32 at 10–13. Not so. "The continuing violation doctrine, where applicable, provides an 'exception to the normal knew-or-should-have-known accrual date.'" *Gonzalez v. Hasty*, 802 F.3d 212, 220 (2d Cir. 2015) (quoting *Harris v. City of New York*, 186 F.3d 243, 248 (2d Cir. 1999)). Under this doctrine, "if a Title VII plaintiff files an EEOC charge that is timely as to any incident of discrimination in furtherance of an ongoing policy of discrimination, all claims of acts of discrimination under that policy will be timely even if they would be untimely standing alone." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 155–56 (2d Cir. 2012) (internal quotation marks omitted). The continuing violation doctrine applies only to claims "composed of a series of separate acts that collectively constitute one unlawful practice." *Hasty*, 802 F.3d at 220 (internal quotation marks and alterations omitted). As such, the doctrine generally applies to hostile work environment claims, given that prosecution of such claims requires plaintiffs to show that "under the totality of the circumstances, the alleged conduct was so 'severe or pervasive as to create an objectively hostile or abusive work environment,'" *Hasty*, 802 F.3d 212 at 220 (internal quotation marks omitted), and conduct generally "must be repeated or ongoing before it is adequately severe or pervasive to constitute a violation," *id.*

---

[9] "It is well established, however, that so long as at least one alleged adverse employment action occurred within the applicable filing period, evidence of an earlier alleged retaliatory act may constitute relevant background evidence in support of that timely claim." *Chin v. Port Auth. of N.Y. & N.J.*, 685 F.3d 135, 150 (2d Cir. 2012) (alterations and internal quotation marks omitted).

However, "the continuing violation doctrine does not apply to *discrete unlawful acts*, even if the discrete acts were undertaken 'pursuant to a general policy that results in other discrete acts occurring within the limitations period.'" *Rivas v. N.Y. State Lottery*, 745 F. App'x 192, 193 (2d Cir. 2018) (summary order) (emphasis added) (quoting *Chin*, 685 F.3d at 157). In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court illustrated the difference between discrete acts and acts giving rise to the continuing violations doctrine:

> Discrete acts such as termination, failure to promote, denial of transfer, or refusal to hire are easy to identify. Each incident of discrimination and each retaliatory adverse employment decision constitutes a separate actionable "unlawful employment practice." . . . Hostile environment claims are different in kind from discrete acts. Their very nature involves repeated conduct. The "unlawful employment practice" therefore cannot be said to occur on any particular day. It occurs over a series of days or perhaps years and, in direct contrast to discrete acts, a single act of harassment may not be actionable on its own.

536 U.S. 101, 114–15 (2002) (citations omitted). "A discrete retaliatory or discriminatory act occurred on the day that it happened. A party, therefore, must file a charge within . . . 300 days of the date of the act or lose the ability to recover for it." *Id.* at 110 (internal quotation marks omitted).

Here, the retaliatory acts alleged by Velez—i.e., the Board's denials of his applications for ADR benefits—plainly fall within the category of discrete acts. *See Humphreys v. N.Y.C. Health & Hosps. Corp.*, No. 16 Civ. 9707 (VSB), 2018 WL 3849836, at *4 (S.D.N.Y. Aug. 18, 2018) (concluding that repeated denial of wages are discrete acts that do not form the basis for a continuing violation claim); *Stewart v. City of New York*, No. 11 Civ. 6935 (CM), 2012 WL 2849779, at *8 (S.D.N.Y. July 10, 2012) ("Like promotion, the failure to give benefits is generally a discrete act."); *Gaston v. N.Y.C. Dep't of Health Office of Chief Med. Exam'r*, 432 F. Supp. 2d 321, 328 (S.D.N.Y. 2006) (finding claims predicated on "denial of rights and benefits of employment" constitute discrete acts subject to Title VII's 300-day filing period). Hence, the

13

continuing violation doctrine is inapplicable, and the retaliatory acts alleged by Velez are time-barred insofar as they occurred more than 300 days prior to Velez's EEOC charge.

Velez's complaint also fails to state a claim for retaliation on the merits. "To establish a presumption of retaliation at the initial stage of a Title VII litigation, a plaintiff must present evidence that shows (1) participation in a protected activity; (2) that the defendant knew of the protected activity; (3) an adverse employment action; and (4) a causal connection between the protected activity and the adverse employment action." *Littlejohn v. City of New York*, 795 F.3d 297, 315–16 (2d Cir. 2015) (internal quotation marks omitted). "In this context, retaliation must be a 'but-for' cause of the adverse employment action." *Moy v. Perez*, 712 F. App'x 38, 40 (2d Cir. 2017) (summary order) (quoting *Vega v. Hempstead Union Free Sch. Dist.*, 801 F.3d 72, 90 (2d Cir. 2015)).

Here, Velez fails to allege a plausible causal connection between his alleged protected activity[10]—i.e., his participation in a lawsuit against the NYPD in the early 1990s—and the *timely* adverse employment action alleged—i.e., the Board's third denial of his application for ADR benefits in 2017. "Close temporal proximity between the plaintiff's protected action and the employer's adverse employment action may in itself be sufficient to establish the requisite causal connection between a protected activity and retaliatory action." *Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 552 (2d Cir. 2010). However, as the Supreme Court has observed, "[t]he cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case [of retaliation] uniformly hold that the temporal proximity must be very close." *Clark*

---

[10] Defendants argue that Velez's participation in *Velez I* does not constitute protected activity for Title VII purposes because *Velez I* was "devoid of any contention of discrimination based on race or any other protected characteristic." Doc. 27 at 18–19. However, because Velez's retaliation claim fails on other grounds, at this time the Court need not, and thus does not, resolve whether Velez's participation in *Velez* I constitutes protected activity.

*Cty. Sch. Dist. v. Breeden,* 532 U.S. 268, 274 (2001) (internal quotation marks omitted); *see also id.* (observing that "[a]ction taken . . . 20 months later suggests, by itself, no causality at all").

Here, in support of his retaliation claim, Velez alleges that "the City, through its agents, including [] Garvey, engaged in various retaliatory actions . . . as a result of his opposition to race and color discrimination and as a result of his filing such complaints with the NYPD and the New York State Supreme Court." Doc. 1 ¶ 47. But Velez's suit against the NYPD settled in 1992. And the Board denied his third application for ADR benefits more than twenty years later. Consequently, without more plausible and nonconclusory factual allegations, Velez's challenged adverse employment action is too attenuated from his alleged protected activity to state a claim for relief under Title VII. *See Brown v. City of New York*, 622 F. App'x 19, 20 (2d Cir. 2015) (summary order) ("The time lapses between Brown's protected activities and the alleged retaliatory acts—ranging from two months to several years—were simply too attenuated to establish that the alleged adverse employment actions were the product of a retaliatory motive absent other supporting factual allegations"); *Sanchez v. Conn. Nat. Gas Co.*, 421 F. App'x 33, 35 (2d Cir. 2011) (summary order) (finding insufficient evidence to support an inference that a causal connection exists between protected speech that occurred at least two years prior to adverse employment action); *Morris v. Lindau*, 196 F.3d 102, 113 (2d Cir. 1999) ("[S]ince two years elapsed between [the plaintiff's allegedly protected activity] and his discharge, no inference of causation is justified."). His retaliation claim is therefore dismissed.

### 3. *Velez's Claims for Race and Color Discrimination under Title VII Fail*

Much like Velez's claim for retaliation, Velez's for race and color discrimination are time-barred insofar as the claims are based the Board's first two denials of his applications.

15

Velez's discrimination claims also fail on the merits. "The ultimate issue in an employment discrimination case is whether the plaintiff has met her burden of proving that the adverse employment decision was motivated at least in part by . . . a discriminatory reason." *Stratton v. Dep't for the Aging for N.Y.*, 132 F.3d 869, 878 (2d Cir. 1997) (internal quotation marks omitted). "At the pleadings stage, then, a plaintiff must allege that the employer took adverse action against her at least in part for a discriminatory reason, and she may do so by alleging facts that directly show discrimination or facts that indirectly show discrimination by giving rise to a plausible inference of discrimination." *Vega*, 801 F.3d at 87. "An inference of discrimination can arise from circumstances including, but not limited to, 'the employer's criticism of the plaintiff's performance in ethnically degrading terms; or its invidious comments about others in the employee's protected group; or the more favorable treatment of employees not in the protected group; or the sequence of events leading to the plaintiff's discharge." *Littlejohn*, 795 F.3d at 312 (quoting *Leibowitz v. Cornell Univ.*, 584 F.3d 487, 502 (2d Cir. 2009)).

Here, Velez fails to allege any plausible and nonconclusory facts to support an inference of discrimination. A charitable reading of Velez's complaint reveals only the following nonconclusory factual allegations: (1) In 1992, following Velez's participation in a discrimination suit against the NYPD, Garvey warned Velez that the NYPD "never forgets its enemies;" (2) over twenty years later, on three separate occasions, the 12-member Board denied Velez's applications for ADR benefits; and (3) there are other applicants who have been awarded benefits based on similar evidence Velez proffered to the Board. However, none of these allegations, without more, gives rise to a plausible inference of racial or color discrimination. S*ee Littlejohn*, 795 F.3d at 312. What's more, while Velez alleges that Garvey "improperly

influenced the outcome" of his ADR benefits applications, Velez fails to support this conclusory allegation with *any* factual allegations suggesting that Garvey played *any* role in consideration of Velez's applications.[11]

### 4. *Velez's Claim for Hostile Work Environment under Title VII Fails*

Velez's claim for hostile work environment fails on the merits. The Court's reasoning here is straightforward. Velez was retired during the incidents he claims created a hostile work environment, and it is axiomatic that a plaintiff must be *working* to suffer from a hostile *work* environment. In his complaint, Velez alleges that he retired from the NYPD in 2003, Doc. ¶ 16; that he did not apply for ADR benefits until 2007, *id.* ¶ 22; and that he last applied for ADR benefits in 2016, *id.* ¶ 39. To succeed on a hostile work environment claim, a plaintiff must show that "the *workplace* was so severely permeated with discriminatory intimidation, ridicule, and insult that the *terms and conditions of her employment* was thereby altered." *Alfano v. Costello*, 294 F.3d 365, 373 (2d Cir. 2004) (emphases added). In other words, any incidents giving rise to the hostile work environment claim must have occurred during the plaintiff's *employment*. Given that the Board's denials of Velez's applications for ADR benefits occurred wholly outside of any "workplace" and occurred fourteen years *after* termination of his employment relationship with the City, assuming *arguendo* the Board's denials of his applications amounted to "discriminatory intimidation, ridicule, and insult" (a conclusion that does not appear plain to the Court), Velez's hostile work environment claim nevertheless fails.

---

[11] The Court observes further that whereas Velez alleges that Garvey was LBA President in the 1990s, and whereas the LBA President is entitled to vote on an applicant's eligibility for ADR benefits, *see supra* Part I.A., Velez does not allege that Garvey served as LBA President during the Board's consideration of Velez's applications. And Defendants, for their part, have proffered NYPD press releases stating that Garvey vacated his role as LBA President months before the Board's consideration of Velez's first application. Doc. 27 at 7–8 & nn.8–9. The Court takes judicial notice of these press releases. *See In re Foreign Exch. Benchmark Rates Antitrust Litig.*, 74 F. Supp. 3d 581, 589 n.4 (S.D.N.Y. 2015) (collecting cases).

### D. Velez's Claims under §§ 1981, 1983, and 1985 Fail

Most of the core substantive standards that apply to Velez's claims of discriminatory conduct in violation of Title VII are also applicable to claims of employment discrimination in violation of §§ 1981, 1983, and 1985. *Patterson v. Cty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004); *see also Gonzalez v. City of New York*, 354 F. Supp. 2d 327, 330 n.2 (S.D.N.Y. 2005). However, there are some material differences between the latter standards and Title VII.

*First*, claims under §§ 1981, 1983, and 1985 need not be asserted within the 300-day period applicable to Title VII claims. Instead, in New York the statute of limitations applicable to such claims is three years. *Id.* at 225; *see also Paige v. Police Dep't of Schenectady*, 264 F.3d 197, 1999 n.2 (2d Cir. 2001). Accordingly, Velez's claims under §§ 1981, 1983, and 1985 are time-barred insofar as they are based on actionable incidents that occurred before February 14, 2015—three years prior to Velez's commencement of this action on February 15, 2018. Given that the Board's first two denials of Velez's applications occurred prior to February 15, 2015, those denials are not actionable.

*Second*, "when the defendant sued for discrimination under § 1981 or § 1983 is a municipality—or an individual sued in his official capacity—the plaintiff is required to show that the challenged acts were performed pursuant to a municipal policy or custom." *Patterson*, 375 F.3d at 226 (citations omitted). Moreover, "an individual may be held liable under §§ 1981 and 1983 only if that individual is 'personally involved in the alleged deprivation.'" *Littlejohn*, 795 F.3d at 314.

Here, Velez does not allege that *any* of the municipal defendants acted pursuant to a municipal policy or custom. And while Velez claims that Garvey "improperly influenced the

outcome" of his ADR applications, such a conclusory allegation, without more, is insufficient to show personal involvement. Accordingly, Velez's §§ 1981 and 1983 claims fail.

*Third*, whereas "Title VII claims are not cognizable against individuals, individuals may be held liable under §§ 1981 and 1983 for certain types of discriminatory acts, including those giving rise to a hostile work environment." *Id.* at 226. Consequently, Velez's hostile work environment claims against Garvey, sued in his individual capacity under §§ 1981 and 1983, are not automatically subject to dismissal. *See id.* However, such claims nevertheless fail under §§ 1981 and 1983 for the same reasons they fail under Title VII, *see supra*. And Velez's claims for retaliation and race and color discrimination under § 1981 fail for the same reasons they fail under Title VII, *see supra*.

Finally, Velez's claims under §§ 1983 and 1985 alleging that Defendants conspired to discriminate against him fail. The standards for conspiracy under §§1983 and 1985(3) are substantially similar. "To survive a motion to dismiss on [a] § 1983 conspiracy claim, [the plaintiff] must allege (1) an agreement between a state actor and a private party; (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal causing damages." *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 324–25 (2d Cir. 2002). Likewise, "[t]o state a cause of action under § 1985(3), a plaintiff must allege (1) a conspiracy (2) for the purpose of depriving a person or class of persons of the equal protection of the laws, or the equal privileges and immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of a right or privilege of a citizen of the United States." *Traggis v. St. Barbara's Greek Orthodox Church*, 851 F.2d 584, 586–87 (2d Cir. 1988). Under either statute, "[a] complaint containing only conclusory, vague, or general allegations of conspiracy to deprive a person of constitutional

rights cannot withstand a motion to dismiss." *Sommer v. Dixon,* 709 F.2d 173, 175 (2d Cir. 1983).

Here, while Velez alleges that Defendants conspired to deprive him of his constitutional and statutory rights, Velez's complaint contains only a conclusory, implausible allegation that Garvey "improperly influenced the outcome" of his application. As discussed several times *supra*, such an allegation is insufficient to maintain a claim.

## IV. CONCLUSION

For the reasons explained above, Defendants' motion to dismiss Velez's complaint is GRANTED without prejudice. If Velez wishes to file an amended complaint to attempt to cure the defects in his claims, Velez must move to do so by April 21, 2019, and he must attach to his motion a copy of the proposed amended complaint. Failure to move to amend within the timeframe provided shall result in dismissal of Velez's claims with prejudice. The Clerk of Court is respectfully directed to terminate the motion, Doc. 25.

It is SO ORDERED.

Dated: March 27, 2019
New York, New York

_____
Edgardo Ramos, U.S.D.J.